STATE of Missouri, Plaintiff–
Respondent,

v.

Thomas SHOCKLEY, Defendant–
Appellant.

Nos. 24792, 24791.

Missouri Court of Appeals,
Southern District,
Division Two.

March 10, 2003.

Ellen H. Flottman, Assistant State Public Defender, of Columbia, for appellant.

Jeremiah W. Nixon, Attorney General, Dora A. Fichter, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Presiding Judge.

Following jury trial, Thomas Shockley ("Defendant") was convicted of burglary in the second degree, § 569.170, RSMo 2000, and felony stealing, § 570.030, RSMo 2000. With four points relied on, Defendant challenges the sufficiency of the evidence on both counts and contends that trial court plainly erred in instructing the jury in the disjunctive on the alternatives that Defendant either acted together with or aided Janie Easling in the commission of the alleged crimes.

Viewing the evidence in the light most favorable to the verdict, the following evidence was adduced at trial. After Easling and Defendant, who was Easling's boyfriend, became stranded in North Carolina, Nancy Loudermilk, Easling's aunt, traveled there to pick them up so that they could stay at the Loudermilks' home in Missouri (the home of Nancy and her husband Joseph, whom we will refer to as the Loudermilks when discussing them as a couple, Loudermilk when referring only to Nancy). Defendant and Easling stayed with the Loudermilks for four to five weeks, until they moved into a mobile home that the Loudermilks owned, which was down the street from the Loudermilks' home. When Defendant and Easling moved into the mobile home, Defendant changed the locks and expressed that "no one was going in his house." At the same time, Loudermilk decided that Defendant and Easling would no longer have permission to be in her home.

On December 8, 2000, Eunice Blythe, the Loudermilks' daughter who also lived in a mobile home on the Loudermilks' property, borrowed her parents' Ford Explorer to drive herself, as well as Defendant and Easling, to work. Blythe decided against driving her own vehicle, a 1995 Mazda 626, that day because it had a bad tire. Blythe often took Defendant and Easling to work because they did not have their own vehicle.

Two hours after arriving at work, Defendant and Easling asked Blythe to take them home because Defendant was ill "and needed to go to the doctor." Blythe drove them home after stopping by a bank, per Defendant's request, so that he could get more checks. It was approximately 10:30 a.m. when Blythe dropped Defendant and Easling off at their residence.

Loudermilk arrived home that evening around 5:30 p.m. and it appeared to her that the lock on the door had been "picked"; there was a screwdriver lying nearby. Among the items missing were a hunting knife, a camcorder, a five-gallon jug of coins worth between $1,500 and $2,000 that her grandchildren (Blythe's children) had been saving, and some collector coins that Loudermilk kept in a dresser drawer.

Deputy Buddy Thompson ("Deputy") of the Maries County Sheriff's Department was called to the scene and he saw signs that the door had been pried open. During Deputy's investigation, at approximately 6:30 p.m., Blythe returned home. Deputy asked Blythe to check on her residence and she found that her Mazda was missing. There were two sets of keys to the vehicle, one that Blythe kept in her purse and another that was kept in her parent's house. The missing set was that which she kept in her purse, which had been in her purse that morning when she drove Defendant and Easling to work.

Deputy went to Defendant and Easling's mobile home and found that they were gone. Given all of the information that he had gathered about the missing items and vehicle, as well as information that Blythe had taken Defendant and Easling home from work earlier that morning, Deputy asked his dispatch to register the vehicle as stolen.

On December 12, 2000, while responding to a call at a motel, Corporal Keith Watson ("Corporal") of the Hillsborough, North Carolina Police Department noticed a Mazda 626 in the parking lot with two people sleeping in it. Corporal, who was in full uniform, approached the driver's side of the vehicle, while another officer approached the passenger's side. Corporal knocked on the window and Defendant awoke, rolled down the window, and handed Corporal a North Carolina identification card.

Corporal ran the identification card and Missouri plates through his communication center and just as he received verification that the vehicle was stolen, Defendant drove out of the parking lot. Corporal pursued the vehicle, with lights and sirens activated, into a subdivision where Defendant exited the vehicle, but was apprehended following a short foot pursuit. During Corporal's interview with Defendant at the scene, Defendant indicated that he ran because the vehicle was stolen. Blythe later identified the vehicle as hers.

As two separate causes, Defendant was charged with one count of burglary in the second degree, in violation of § 569.170, RSMo 2000, and one count of felony stealing, in violation of § 570.030, RSMo 2000. For both charges, the information stipulated that Defendant committed the crime while "acting in concert with Janie Easling." The two cases were consolidated for trial.

At trial, Easling testified that on December 8, 2000, she and Defendant returned home from work early because they both were ill, although under cross-examination she testified that she meant to say that only Defendant was ill. Easling then provided the following account of what happened that day. While Defendant was in their residence, she went into the Loudermilks' home without permission. She took the keys to Blythe's car that were in the house, but took nothing else. She returned to the residence she shared with Defendant, woke him up, and informed him that Blythe said that they could take her car to North Carolina and later meet her in Florida. According to Easling, they had discussed taking this trip with Blythe on previous occasions.

Easling continued her account by addressing the encounter with Corporal four days later in North Carolina. Easling testified that she and Defendant fled the parking lot of the motel because she was scared given that she had stolen the vehicle. When asked whether she had told Defendant that the vehicle was stolen prior to Corporal approaching the vehicle, Easling first said, "no," but later stated it was possible that she had told him at some point prior to that, between the time that they left their residence in Missouri and arrived in North Carolina.

Regarding money, Easling testified that she and Defendant had 70 or 80 dollars with them when they left Missouri. She also testified that four new tires were purchased for the vehicle once they reached North Carolina.

At trial, the defense also called Peggy Landreth as a witness. She was a friend of the Loudermilks' son and also lived on the Loudermilks' property. On cross-examination, Landreth testified that she did not believe that Easling was capable of committing the crimes alone.

The following jury instructions are of interest to this appeal.

## INSTRUCTION NO. 5

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing the offense, he aids or encourages the other person in committing it.

## INSTRUCTION NO. 6

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on December 8, 2000, in the County of Maries, State of Missouri, the defendant or Janie Easling knowingly entered unlawfully in an inhabitable structure located at 20909 County Road 636 and owned by Joseph and Nancy Loudermilk, and

Second, that defendant or Janie Easling did so for the purpose of committing the crime of stealing therein,

then you are instructed that the offense of burglary in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that burglary, the defendant acted together with or encouraged Janie Easling in committing that offense,

Then you will find the defendant guilty under Count I of burglary in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

## INSTRUCTION NO. 8

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on December 8, 2000, in the County of Maries, State of Missouri the defendant or Janie Easling took a 1995 Mazda, possessed by Eunice Blythe, and

Second, that defendant or Janie Easling did so without the consent of Eunice Blythe, and

Third, that defendant or Janie Easling did so for the purpose of withholding it from the owner permanently, and

Fourth, that the property taken was an automobile,

then you are instructed that the offense of stealing has occurred, and if you further find and believe from the evidence beyond a reasonable doubt

Fifth, that with the purpose of promoting or furthering the commission of that stealing, the defendant acted together with or aided Janie Easling in committing that offense,

then you will find the defendant guilty under Count II felony stealing.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The jury found Defendant guilty on both counts and he was sentenced to 12 years' imprisonment for each, to be run concurrently. Following the denial of Defendant's motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial, Defendant appealed.

In Defendant's first two points, he challenges the sufficiency of the evidence to

sustain his convictions for burglary in the second degree, § 569.170, RSMo 2000, and felony stealing, § 570.030, RSMo 2000.

■■■ Our standard of review is the same for both points. In reviewing the sufficiency of evidence to sustain a criminal conviction, we accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Puig,* 37 S.W.3d 373, 375 (Mo.App.2001). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* It is for the jury to determine the reliability, credibility, and weight of the witnesses' testimony. *Id.*

■■■ Defendant was charged as an accomplice in both crimes. Although Missouri at one time made a distinction between principals and accessories to a crime, Missouri has since eliminated such a distinction with respect to accomplice liability. *State v. Wurtzberger,* 40 S.W.3d 893, 895 (Mo. banc 2001). Under current Missouri law, all persons who act in concert to commit a crime are equally guilty. *State v. Bradshaw,* 26 S.W.3d 461, 469 (Mo.App.2000). Because of the status of the law, the State was not required to charge Defendant as an accomplice, since charging a defendant as a principal or as an aider or encourager has the same legal effect and, even if charged as a principal, the case may be submitted to the jury on the theory of accomplice liability. *State v. Jackson,* 822 S.W.2d 952, 957 (Mo.App. 1992).

■■■ We consider the totality of the circumstances. *State v. Edmonds,* 729 S.W.2d 588, 590 (Mo.App.1987). Under accomplice liability, the evidence need not show that Defendant personally committed every element of a crime. *Bradshaw,* 26 S.W.3d at 469. Mere encouragement is enough and any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. *Id.* Affirmative participation may be shown by circumstantial evidence. *Edmonds,* 729 S.W.2d at 590.

■■■ Viewing the evidence in the light most favorable to the State, there was ample evidence, albeit much of it circumstantial, to show Defendant's affirmative participation in the crimes of burglary in the second degree and felony stealing. Defendant approached Blythe to take him and Easling home because he was so ill that he needed to be seen by the doctor; however, Blythe provided their only transportation and Defendant only asked to be taken home, not to a doctor, making a stop at the bank to obtain checks. Easling first testified that she and Defendant were both ill, but then indicated she meant to testify that only Defendant was ill.

According to Blythe, the set of keys missing to her 1995 Mazda was the set from her purse, not the set in the Loudermilks' home that Easling testified she took when she, alone, committed the burglary and stole the vehicle. Defendant, as the driver of that stolen vehicle, fled from the parking lot in North Carolina and explained his actions to Corporal by stating that he ran because it was stolen. Easling had difficulty remembering when she informed Defendant that he was actually driving a stolen vehicle, first testifying that it was as they were approached by Corporal in that North Carolina parking lot, but then testifying that perhaps she had informed Defendant at some point earlier during the four days after they left their Missouri residence and traveled to North Carolina.

There was no dispute that Defendant was at or near the scene of the crimes, as

the evidence was that the residence he shared with Easling was just down the street from the Loudermilks' home. The only person who provided Defendant with the alibi that he was sleeping or ill at the time Easling allegedly committed these crimes was Easling herself, whose testimony may not have been believed by the jurors, as it is within their purview to believe or disbelieve, in whole or in part, the testimony of any witness. *State v. Schaal*, 83 S.W.3d 659, 662 (Mo.App.2002). There was also the testimony of another defense witness, Landreth, who was a friend of the Loudermilks' son and lived on their property. She testified that she did not believe that Easling was capable of committing the crimes alone. The jury may have assigned a greater weight and level of credibility to her testimony, which again is within its province. *Id.*[1]

Given the totality of the circumstances, our standard of review, and the jury's responsibility to determine the reliability, credibility, and weight of the witnesses' testimony, we find that there was sufficient evidence that Defendant actively participated in the crimes at least to the extent necessary to find him guilty on the theory of accomplice liability. Defendant's Points I and II and denied.

Defendant contends in Points III and IV that the trial court plainly erred in instructing the jury in the disjunctive in Instruction No. 6 (burglary in the second degree) and Instruction No. 8 (felony stealing) because there was not evidence to support both alternatives that Defendant "acted together with or encouraged" Easling in the commission of the offenses.[2]

Defendant concedes that Points III and IV are not preserved for review because he failed to object to the instructions either at trial or in his motion for new trial. Thus, at most he may be granted a plain error review. *State v. Barnes*, 708 S.W.2d 270, 272 (Mo.App. 1986). Such review is discretionary. *State v. Moriarty*, 914 S.W.2d 416, 421 (Mo.App.1996).

Instructional error is rarely plain error, and to demonstrate plain error in this regard, Defendant must establish more than mere prejudice, but rather a manifest injustice or miscarriage of justice. *Id.* In the context of instructional error, plain error, or that manifest injustice or miscarriage of justice, results when the trial court has misdirected or failed to instruct the jury such that the error affected the jury's verdict. *State v. Hughes*, 84 S.W.3d 176, 181 (Mo.App.2002). For Defendant to be entitled to plain error review, the claim must establish on its face substantial grounds for believing that manifest injustice occurred. *Id.*

Defendant is correct that the disjunctive submission of alternative means by which a single crime can be committed is proper only if the alternative submissions are each supported by the evidence. *Puig*, 37 S.W.3d at 377. Both Instruction No.6 and Instruction No. 8 followed MAI–CR3d 304.04. The Notes on Use, specifically 5(c), indicate that the accomplice liability instruction applies when the evidence is not clear whether the defendant acted alone or with an accomplice. *State v. Sherman*, 927 S.W.2d 350, 354–55 (Mo.App.1996). If the evidence is unclear

---

1. No question is presented is this appeal on whether Landreth's testimony regarding Easling's capability of committing the crimes alone is admissible.

2. In Instruction No. 6, the language is "acted together with or encouraged"; however, in Instruction No. 8, the language is "acted together with or aided." Either wording is allowed under MAI–CR3d 304.04.

as to which person committed the acts, the disjunctive use is proper since the jury could find that either person committed the act. *State v. Minson*, 791 S.W.2d 868, 872 (Mo.App.1990). Thus, the purpose of the disjunctive instruction is to give the jury an opportunity to consider evidence that is unclear. *Sherman*, 927 S.W.2d at 354.

 The evidence outlined prior to the analysis of Points I and II, and within the analysis itself, show that the evidence conflicted as to whether Defendant or Easling committed the acts associated with the crimes of burglary in the second degree and felony stealing. There was conflicting testimony and the jury's verdict was affected, not by any error in instructions, but rather by the manner in which it determined the reliability, credibility, and weight of the witnesses' testimony. Points III and IV are denied.

The judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.

Susan L. Hogan, Assistant State Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. Nixon (Jay), Attorney General, Charnette D. Douglass, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before HOWARD, P.J., LOWENSTEIN and HARDWICK, JJ.