**STATE of Missouri, Respondent,**

v.

**Donald L. BIGGS, Sr., Appellant.**

**No. WD 63312.**

Missouri Court of Appeals,
Western District.

June 21, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2005.

Application for Transfer Denied
Sept. 20, 2005.

Jeannie M. Willibey, Kansas City, MO, for appellant.

Deborah Daniels, Jefferson City, MO, for respondent.

Before ROBERT G. ULRICH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

ROBERT G. ULRICH, P.J.

Donald Biggs, Sr. was convicted of first-degree robbery, section 569.020,[1] as an accomplice in the armed robbery of Michele Leach. He was acquitted of first-degree assault and armed criminal action, charges that emanated from the same occurrence. Mr. Biggs asserts two points on appeal, claiming that the trial court plainly erred by (1) instructing in the disjunctive in its verdict director when the evidence supported only a single theory of liability,

and (2) failing to *sua sponte* either declare a mistrial or instruct the jury to disregard allegedly improper comments made by the State during closing argument.

The judgment of conviction is affirmed.

### Facts

In an appeal from a conviction, the evidence presented at trial is reviewed in the light most favorable to the verdict. *State v. Storey,* 901 S.W.2d 886, 891 (Mo. banc 1995). On October 25, 2001, Donald Biggs, Sr. (Mr. Biggs) left his Independence home with his son, Donald Biggs, Jr. (Donald Jr.). Over the next two days, Donald, Jr. engaged in a series of armed robberies throughout numerous cities and counties in western Missouri. Donald Jr. was ultimately convicted of the crimes, and Mr. Biggs was charged as an accomplice in the robbery and shooting of Michele Leach, the final robbery in the spree. The details of the other robberies were recounted in detail throughout the course of the three-day trial. Mr. Biggs does not challenge the sufficiency of the evidence against him, but a summary review of the events provides context to the points raised on appeal.

On October 25, 2001, Madhuker Patel was the general manager of a Days Inn in Oak Grove in which Mr. Biggs, Donald Jr., and a young woman rented a room. At around 2 p.m., Mr. Biggs left with the woman while Donald Jr. remained in the lobby. Donald Jr. displayed a gun and demanded money from Mr. Patel. In addition to the money from the cash drawer, Mr. Patel gave Donald Jr. his wallet, which contained credit cards and identification. After leading Mr. Patel to his apartment in search of more money, Donald Jr. fled.

The following day, October 26, Audrey Portwood was working at the Alamo

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

Steakhouse in Sedalia. Although the restaurant was closed, Ms. Portwood heard the alarm signal that someone had entered the front door at about 2:30 p.m. A man standing in the front of the restaurant displayed a gun from "somewhere," which he put to her throat and demanded money. Ms. Portwood pushed the gun away and it discharged. The man then pushed Ms. Portwood down and ran out the front door. Although Ms. Portwood ran after him, she was unable to see the man or any vehicles except her own and the Miller beer truck in the parking lot. Ms. Portwood was unable to identify the man who had attempted to rob her, but Donald Jr. admitted to the robbery when he later testified at his father's trial.

During the afternoon of the same day, Pamela Parr was working at a convenience store in Tipton. Donald Jr. came into the store to ask her for an application, at which time she noticed his left ear was "all bloody" and he was "acting weird." Soon, Ms. Parr heard a clerk "hollering" and noticed Donald Jr. behind the counter with the clerk. Donald Jr. swung around and pointed a gun at Ms. Parr's head, demanding money. After he had taken the money from the cash register, Donald Jr. ordered Ms. Parr, the clerk, and a customer into a back room. He ordered them to lie on the floor, where they remained until he left. Ms. Parr did not see any vehicle in the parking lot except her own car and the cars of the clerk and the customer. A senior housing center that includes parking for the residents is located behind the building, though customers ordinarily did not park at the senior center to visit the convenience store.

Around noon on October 27, 2001, Joanne Gregory and Doris Wren were working at an antique mall in Rocheport. The door opened, and Donald Jr. walked in and asked for the manager. Donald Jr. produced a firearm and demanded money. Ms. Gregory gave him the money from the cash register, and both women gave Donald Jr. the money from their purses. Donald Jr. threatened to kill the two women and ordered them to sit in chairs at the bottom of the steps leading to the basement of the building. He then went back up the stairs and yelled to someone "it is clear, you can come in." Ms. Gregory and Ms. Wren proceeded out the back door, ran to the interstate, and waved down a car for help.

Just after 1:00 p.m. on October 27, 2001, Michele Leach was working at a gas station in Emma. Ms. Leach observed an older man driving an older-model maroon car that entered the parking lot and drove between the gas pumps. The car parked parallel to the store near a coin-operated air pump with the passenger side of the vehicle facing the store. The passenger within the car, later identified as Donald Jr., came into the store and asked Ms. Leach for change for a dollar. After Ms. Leach provided the change, Donald Jr. returned to the passenger side door of the vehicle he had exited, which had been left open. Ms. Leach noticed that he then leaned into the passenger side of the car and grabbed something before coming back into the store. Donald Jr. approached the register and presented a firearm that had been concealed beneath his clothing, demanding money.

Donald Jr. ordered Ms. Leach to give him the money out of the register and the safe and to keep her hands where he could see them. Ms. Leach opened the cash register, and Donald Jr. reached over the counter and grabbed the money. As Donald Jr. backed out of the store, he pulled the trigger of the firearm twice, but each time it misfired making a clicking sound. He pulled the trigger a third time, and the weapon fired. Ms. Leach was shot in her

left side, just above her waistline. Donald Jr. ran out of the store and jumped into the waiting vehicle, which immediately left the parking lot and proceeded west on Interstate 70. Ms. Leach called 911 and told the operator that a maroon car was proceeding westbound on I–70. Ms. Leach was transported to Marshall, where she underwent extensive surgery.

Officer Monte Crane of the Concordia Police Department received information about the shooting shortly after 1:00 p.m. Officer Crane stopped his marked patrol car under an overpass of I–70 and saw a maroon car exit the interstate and proceed toward the top of the ramp at a high rate of speed. Before the car had traveled half way to the top of the exit ramp, the front end of the car "dipped severely, indicat[ing] that the driver had either seen the patrol car or over estimated his speed." The car stopped at the stop sign at the top of the exit ramp, where it remained for thirty to forty-five seconds while the individuals in the vehicle conversed with each other. The passenger of the car "shrank down" in the seat, looking at the officer, and the driver was "looking back and forth." The driver of the car then accelerated, leaving black marks on the roadway.

Officer Crane activated his siren and emergency flashers and followed the car as it drove into a gas station entrance and stopped. As the officer exited the vehicle, Donald Jr. opened the passenger door, rolled out of the car, and fired shots at the officer. Officer Crane fired his weapon in response, and Donald Jr. fled. Officer Crane then approached the driver and ordered him out of the car. Mr. Biggs responded by driving the vehicle from the parking lot. Officer Crane radioed a description of the car and the license plate number.

Corporal Alex Whitehead of the Missouri State Highway Patrol was driving a patrol car when he heard about these incidents over the radio and soon observed the identified vehicle traveling west on I–70. He followed the vehicle and eventually arrested Mr. Biggs. Corporal Whitehead discovered Mr. Patel's credit cards, Price Chopper card, and driver's license in Mr. Biggs' front shirt pocket. When asked to whom the cards belonged, Mr. Biggs said something that Corporal Whitehead could not understand. When asked what he had been doing for the last three hours, Mr. Biggs replied, "trying to get away from . . . ." After this statement, he paused and then stated that he was with a prostitute.

Deputy William McCoy of the Lafayette County Sheriff's Office interviewed Mr. Biggs on October 29, 2001. After being informed of his *Miranda* rights, Mr. Biggs provided an oral statement that was written down for him. Mr. Biggs signed the statement. He admitted to having been present with his son throughout the prior few days. He stated that on October 25, 2001, Donald Jr. came to his house and asked him to leave with him. Mr. Biggs stated that Donald Jr. had insisted he go and that he would take Mr. Biggs' car whether "he liked it or not." He admitted to being present at the bar in Sedalia, at the store in Tipton, and at the gas station at Emma where the crimes of the last few days had occurred.[2] He stated that he did not know what Donald Jr. had done when he went into the gas station at Emma. Mr. Biggs further stated that he had stopped in Concordia for gas and that the first time

---

**2.** Mr. Biggs admitted driving Donald Jr. to "Boonville," which the prosecution argued was in fact the robbery in Rocheport.

he knew Donald Jr. had a firearm was when he fired at the police officer.

Mr. Biggs was charged by indictment with the class A felony of first degree robbery, section 569.020; the class A felony of first degree assault, section 565.050; and the unclassified felony of armed criminal action, section 571.015. The charges relate to the robbery and shooting of Michele Leach at the convenience store in Emma. Mr. Biggs was charged as an accomplice.

At trial, Donald Jr. was called as a witness for the defense. He admitted to committing the robbery of Mr. Patel in Oak Grove, the Robbery in Pettis County,[3] the robbery in Rocheport, and the robbery of Michele Leach in Emma. Donald Jr. testified that he did not remember shooting Michele Leach. He further testified that he had forced his father to escort him throughout the crime spree and that Mr. Biggs had no knowledge that Donald Jr. was committing the robberies.

The jury returned a unanimous guilty verdict as to the first-degree robbery charge, but Mr. Biggs was acquitted of the first-degree assault and the armed criminal action charges. This appeal followed.

## Instructional Error

 In his first point on appeal, Mr. Biggs contends that the trial court plainly erred by giving an instruction in the disjunctive when insufficient evidence was presented to support both alternatives suggested in the verdict director for armed robbery. Mr. Biggs concedes that no objection was raised to the verdict director at trial, but he asks this court to review the instruction for plain error pursuant to Rule 30.20. Plain error is only found where the alleged instructional error demonstrates on its face substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. *State v. Baker*, 103 S.W.3d 711, 723 (Mo. banc 2003). An errant jury instruction constitutes plain error only when the appellant demonstrates that the trial court "so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict." *Id.*

Mr. Biggs' specific claim on appeal pertains to instruction number 6, the verdict director for the charged offense of first-degree robbery, which was patterned after MAI–CR3d 304.04. The contested instruction reads as follows:

As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 27, 2001, in the County of Saline, State of Missouri, Donald L. Biggs Jr. took United States Currency, which was property in the possession of Michele A. Leach, and

Second, that Donald L. Biggs Jr. did so for the purpose of withholding it from the owner permanently, and

Third, that Donald L. Biggs Jr. in doing so used physical force on or against Michele A. Leach for the purpose of preventing resistance to the taking of the property, and

Fourth, that in the course of taking the property, Donald L. Biggs Jr. caused serious physical injury to Michele A. Leach,

then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defen-

---

**3.** Donald Jr. represented that he could not recall the bar he robbed in Sedalia.

dant *acted together with or aided* Donald L. Biggs Jr. in committing that offense, then you will find the defendant guilty under Count 1 of robbery in the first degree .... [emphasis added]

Mr. Biggs contends that the disjunctive phrasing of "acted together with or aided" suggests alternative theories that he either assisted Donald Jr. in the commission of the robbery or that he committed some of the conduct elements of the underlying crime. He argues that because no evidence was submitted from which the jury could conclude that he committed any of the conduct elements, it was error to submit the alternative theory to the jury. Mr. Biggs further argues that comments by the prosecution in closing argument exacerbated the prejudice of the erroneous instruction.

Mr. Biggs observes that the alternative language "acted together with or aided" is designed to resolve jury confusion in cases "where the evidence is not clear or conflicts as to whether the defendant simply aided (and did not by his own acts commit any of the conduct elements of the offense) or acted jointly with another person or persons (and by his own acts committed some or all of the conduct elements of the offense)." MAI–CR 3d 304.04, Notes on Use 4. The Notes on Use further indicate that where the conduct elements of the crime are entirely committed by another person or persons, the appropriate language to follow is "aided or encouraged." *Id.*, Notes on Use 5(a). Mr. Biggs draws upon the Southern District's opinion in *State v. Puig*, in which the court held that utilizing the "acted together with" language in situations where no evidence exists that the defendant engaged in the conduct elements may be grounds for reversible error. 37 S.W.3d 373, 378 (Mo. App. S.D.2001).

The problem evinced by this assertion is that it complicates the underlying theory of accessory liability. A person is held accountable for a crime arising from both his own conduct and from the conduct of another for which he is criminally responsible. § 562.036. A person is criminally responsible for the conduct of another when he "aids or agrees to aid or attempts to aid such person in planning, committing or attempting to commit the offense." § 562.041.1(2). The central tenet of accomplice liability is the notion that all who act together "with a common intent and purpose" in committing a crime are equally guilty. *State v. Copeland*, 928 S.W.2d 828, 847 (Mo. banc 1996), *cert. denied*, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997). The legal effect is the same regardless whether an individual is a principal or an accomplice in the commission of a crime, and Missouri makes no distinction between principals and accessories. *State v. Shockley*, 98 S.W.3d 885, 890 (Mo.App. S.D.2003). An accomplice is no less guilty than a principal. *Id.* Because no distinction of guilt is recognized between principal and accomplice in the law, "the State [is] not required to charge [a][d]efendant as an accomplice since charging a defendant as a principal or as an aider or encourager has the same legal effect and, even if charged as a principal, the case may be submitted to the jury on the theory of accomplice liability." *Id.*

The *Puig* decision relies upon the premise that "disjunctive submission of alternative means by which a single crime can be committed" requires the submission of evidence to support each alternative. *See Puig*, 37 S.W.3d at 377. Applying this rule to an instruction on accomplice liability is uniquely problematic, however. While a jury must unanimously agree as to the fact of guilt, the jury need not agree to the means by which a crime was commit-

ted. *See e.g. State v. Thompson,* 112 S.W.3d 57, 66 (Mo.App. W.D.2003). Whether Mr. Biggs committed all, some, or none of the conduct elements is irrelevant. He is guilty of the crime charged if he aided or acted together with Donald Jr. in the commission of the crime. As the Southern District noted in *Shockley,* "the purpose of the disjunctive instruction is to give the jury an opportunity to consider evidence that is unclear." *Shockley,* 98 S.W.3d at 892. The court stated that the accomplice liability instruction applies when the evidence is not clear whether the defendant acted alone or with an accomplice. If the evidence is unclear as to which person committed the acts, the disjunctive use is proper since the jury could find that either person committed the act. *Id.* at 891–92.

■ Mr. Biggs observes that the *Puig* decision is cited within the Notes on Use to MAI–CR3d 304.04. The MAI citation does not endorse nor adopt the opinion within the Notes on Use, however. While circumstances may occur in which alternative theories of accomplice liability could require a different quantum of evidence to support them (such as theories evincing different states of mind), usual theories of aiding and abetting do not include such issues. "To make a submissible case of aiding and abetting, the evidence must show that the defendant associated himself or herself with the venture or participated in the crime in some manner." *State v. Smith,* 108 S.W.3d 714, 719 (Mo.App. W.D. 2003). The evidence presented in this case showed that Mr. Biggs associated himself with the venture for which he was charged and that he participated in the crime by providing essential conduct for its successful completion. The evidence supports a logical inference that he aided in providing the firearm to his son when his son exited the convenience store, acquired the firearm from the vehicle in which Mr. Biggs was seated in the driver's seat, and reentered the store, where he used the weapon to rob and shoot the employee present. And Mr. Biggs drove the "get away" vehicle to escape the crime scene when his son exited the store and reentered the vehicle. Thus, the claimed error fails to demonstrate that a manifest injustice or miscarriage of justice has occurred. The trial court did not commit plain error in giving the instruction approved by defendant through counsel at the instruction conference and never objected to during the trial. The first point of error is denied.

## Improper Closing Argument

In his second point on appeal, Mr. Biggs argues that the trial court plainly erred in failing to *sua sponte* declare a mistrial or instruct the jury to disregard improper comments in the State's closing argument. Mr. Biggs alleges three distinct improprieties in the prosecution's closing argument. First, he alleges that the prosecutor improperly told the jury that Mr. Biggs was taking advantage of the system by requesting a jury trial and presenting his defense. Second, he alleges that the State improperly implied that Mr. Biggs was wrong to exercise his rights when the victim was unable to exercise her own. Third, he alleges that the prosecutor misstated the evidence and referred to matters outside the record by implying that Donald Jr. only testified to help his father because he had lost his own case and had nothing to lose.

■ Because none of the allegedly improper statements were objected to at trial, Mr. Biggs requests plain error review of the claims. "Plain error relief as to closing argument should rarely be granted and is generally denied without explanation." *State v. Crowe,* 128 S.W.3d 596, 600 (Mo.App. W.D.2004). "A trial

court has broad discretion in controlling the scope of closing argument." *Id.* (citing *State v. Martin,* 103 S.W.3d 255, 264 (Mo. App. W.D.2003)). A finding of plain error in the failure to declare a mistrial during closing argument requires Mr. Biggs to show more than that the argument was improper. He must also establish that the improper comments had a "decisive effect on the jury's determination." *State v. Parker,* 856 S.W.2d 331, 333 (Mo. banc 1993). "The burden is on the defendant to prove the decisive significance." *Id.*

Mr. Biggs points to several comments in which he claims the prosecution contrasted the legal rights of Michele Leach to his own. The State's closing argument began by stating that Michele Leach "didn't have a right to an attorney ... [d]idn't have a right to have twelve people sit here and listen to witnesses. Didn't have a right to examine and confront the witnesses." The State then contrasted this with Mr. Biggs by stating, "the beauty of our system is that a defendant accused of a criminal charge in this country does have that right."

In reference to the testimony of Donald Jr., the prosecutor began a similar line of argument. Stating that Donald Jr. has "nothing to lose" because "[h]e is in prison for the rest of his life," the prosecutor argued that after being "afforded the same system that daddy is now taking advantage of, a system that was not available to Michele Leach before she was almost summarily executed, but having afforded himself of that right, having pled not guilty, which he had a right to do, having been represented by counsel and had a jury trial and been found guilty and sentenced to the rest of the life in prison, then he comes in and says daddy didn't know anything about this."

The prosecutor concluded his argument by stating "he's had all the rights that this girl was not afforded. Because he's had all these rights it's now time for you [the jury] to do your job and obligation and that is find him guilty on all three counts."

Mr. Biggs first argues that the prosecutor's comments improperly criticized him before the jury for deciding to exercise his constitutional rights. The prosecutor's comments address Donald Jr.'s credibility, a legitimate issue for discussion during closing argument. The comments also reflect an attempt to distinguish the rights properly afforded Donald Jr. after being charged with a crime from the duress inflicted upon the victim by his conduct. Taken in context, the statements highlight the seriousness of the offense and the defendant's disregard for the law and are not reasonably interpreted as a comment critical of Mr. Biggs' right to a jury trial. Such argument demonstrates neither manifest injustice nor a miscarriage of justice. *See State v. Clayton,* 995 S.W.2d 468, 481 (Mo. banc 1999), *cert. denied,* 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999). Mr. Biggs has failed to demonstrate that the prosecution's argument unfairly criticized him for exercising his right to a jury trial. Similarly the comment that Mr. Biggs was "taking advantage of" the system of justice does not constitute impropriety and a basis for plain error.

Mr. Biggs' final allegation of error in the State's closing argument is that the prosecutor referred to matters outside the record and misstated the evidence at trial. Specifically, Mr. Biggs complains of the implication that Donald Jr. testified for his father after he was found guilty, implicitly attempting to exonerate his father by his testimony. During cross-examination, Donald Jr. specifically discussed the trial proceedings applicable to him that resulted from the crimes he committed. He stated that "I copped to [the Saline County charges] ... I told them I did the crime."

Mr. Biggs further notes that the prosecution did not cross-examine Donald Jr. about any of Donald Jr.'s prior statements that he was testifying to help his father only after being tried and convicted.

■■■■■ The prosecutor's comments addressed Donald Jr.'s motive in testifying for his father. Motive is a legitimate subject for the prosecutor to address. Additionally, the jury was properly instructed to only rule upon the evidence as it recalled it. Instruction 16 stated "[y]ou will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom." During the closing argument when Mr. Biggs' counsel objected to another statement, not a subject of this appeal, the jury was instructed to "remember the evidence." Jurors are presumed to have followed the instructions given by the trial court. *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo. banc 2003). Consequently, any error in the argument is presumptively cured by the instructions of the court.

Mr. Biggs has failed to demonstrate that any of these claimed errors had a decisive effect on the jury. He has not demonstrated plain error in the State's closing argument. The second point is denied.

The judgment of conviction is affirmed.

SMART, J. and ELLIS, J. concur.