STATE of Missouri, Respondent,

v.

Damon WILLIS, Appellant.

No. ED 75169.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 7, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 10, 1999.

S. Paige Canfield, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Wade Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

KENT E. KAROHL, Judge.

The state charged defendant with two counts of assault first degree, class A felonies, unlawful use of a weapon, a class C felony, and tampering in the first degree, a class C felony. The court sentenced defendant as a prior offender to four concurrent sentences. It also ordered the sentences to be concurrent with an existing federal criminal sentence. Defendant argues on appeal: (1) the court erred, or in the alternative, plainly erred in permitting the state to offer evidence defendant was a gang member which "permitted the state to try and convict appellant for being a gang member"; (2) the court erred (a) in denying appellant's motion to dismiss the assault charges because the state failed to disclose evidence requested in a pre-trial discovery motion and (b) in allowing the state to offer the evidence during cross-examination of a defense witness because these rulings allowed the state to unfairly surprise and interfere with appellant's preparation of his case; and, (3) the court erred in not directing a verdict on the tampering in the first degree charge because the evidence was insufficient to support a finding that the automobile he was driving when the police attempted to arrest him was a stolen vehicle.

Defendant does not challenge the sufficiency of the evidence supporting the convictions on the charges of assault first degree. Eyewitness testimony of two police officers supports finding the following facts. On September 24, 1997 Officers Hill and Hines were informed that defendant was driving a stolen automobile. They found the automobile. The officers then chased him until he lost control and crashed into a tree. Defendant got out of the car carrying a semi-automatic pistol. The officers chased him on foot. Defendant and the officers exchanged gunfire before he escaped after a footchase. Police arrested defendant approximately three weeks later. At the time of the arrest they seized a .380 semi-automatic pistol which was identified as the gun that the defendant fired at the officers.

█ It is unnecessary to review the evidence which supported finding defendant was guilty of tampering and unlawful use of a weapon. During opening statement, counsel for defendant told the jury that defendant was driving a stolen vehicle and fled because he had a .22 revolver on him and was driving a stolen car. During closing argument, defense counsel told the jury, "[s]end him to jail for what he did, which was steal the car, and having that .22 that he dropped while trying to run away from the police." The evidence supported these admissions. Accordingly, defendant's argument on appeal that the court erred in failing to direct a verdict on a charge of tampering in the first degree in violation of section 569.080.1(2) RSMo 1994 is denied.

█ Defendant's argument that the court erred in denying a motion for mistrial and permitting the state to offer evidence to support a finding he was a gang member is reviewable only as a matter of plain error. Although the court sustained a motion in limine, which anticipated references to "prior bad acts or knowledge of the defendant from prior bad acts or whatever," there were references to defendant as a gang member by witnesses who testified for the state. The court instructed the circuit attorney to caution the witnesses not to make a reference to gang membership. The prosecutor told the court that that had been done. Defendant did not object to the testimony of one officer that his assignment at the time of the incident was "F.B.I. Gang Task Force." On redirect, the circuit attorney asked the witness whether defendant had any known gang affiliation. After the witness answered yes, defendant objected

"based on my earlier motion." The court *sustained* the objection. When the witness was excused defendant made a motion for mistrial, which the court denied. *Prior* to this testimony, Office Hines testified that he was working with a special gang unit when called to assist in apprehending defendant. The responsibilities of the unit were to document gang members and attend to drug and weapons related offenses of gang members. This evidence was admitted without objection on the ground argued on appeal. The failure to object at the earliest opportunity to the admission of evidence constitutes a waiver for the claim on appeal. *State v. Cosby,* 976 S.W.2d 464, 467 (Mo.App. E.D.1998). An objection made after answer is untimely for the purpose of preserving a claim of error. *State v. Norton,* 949 S.W.2d 672, 676 (Mo.App. W.D.1997). Thus, defendant is entitled to relief only if the error substantially affected his rights and a manifest injustice or miscarriage of justice would result if uncorrected. *State v. West,* 849 S.W.2d 671, 674 (Mo.App. E.D.1993).

We find no plain error in denying a motion for mistrial. First, the court sustained objections when made. Second, membership in a gang may connote prior bad acts, but it is insufficient to support a finding defendant is responsible for prior bad acts. There was no reference to a specific criminal act by defendant or by any "gang" of which he was a member. Vague and indefinite references are insufficient to support a conclusion the court erred in denying a mistrial. *State v. Rhodes,* 829 S.W.2d 41, 44 (Mo.App. E.D. 1992). Finally, the admission of similar evidence without objection defeats a claim of prejudice. *State v. Nastasio,* 957 S.W.2d 454, 459 (Mo.App. W.D.1997). Point denied.

Defendant's third argument in support of a motion for new trial on the assault charges involves the failure of the state to disclose and provide defendant with tape recordings made during the chase by the police department. Before the trial began, defendant informed the court that in February 1998 he subpoenaed the communications unit of the St. Louis Metropolitan Police Department for any tape recordings involved. The police department never provided any tapes for defendant. An officer of the department testified during the trial as defendant's witness. He explained that he had provided one copy of the relevant tapes to the circuit attorney's office and that it was the department policy not to furnish a second copy. The circuit attorney told the court before the trial began that the circuit attorney's office had checked with the police department and found no record that the tape was sent. Particularly, the circuit attorney told the court, "[w]e cannot find the tape ... At this time we've been told that the original is destroyed. We're continuing to search for the tape in our offices. I don't anticipate that we are going to find it." The circuit attorney had never seen nor heard the tape. Defense counsel informed the court that the dispatch tape may contain some exculpatory material. On that basis, counsel moved for dismissal. The court denied the motion, but instructed the circuit attorney that if the tape should some way become available or become known to the state or its whereabouts become known, that counsel turn over a copy to defendant. If that should occur, the court told defense counsel he would provide every opportunity to listen to the tape "and any request for a continuance would be looked upon favorably by the Court."

The strategy for defending the assault first degree charges was two-fold. First, to emphasize that there were no shell casings found in the area of the chase that were compatible with the weapon seized at the time defendant was arrested and identified as the weapon defendant used. This would infer defendant did not shoot at the officers. Second, to benefit from an inference that the dispatch tape, which was lost or destroyed, would contain exculpatory evidence. In support of that strategy, defense counsel called Officer John Clobes.

On direct examination he provided testimony that all incoming 911 telephone calls are tape-recorded, and most transmissions between the officers out on the street and dispatchers are recorded. Two days after the date of the charged crimes, he responded to a request of the circuit attorney's office and made a copy of the relevant tapes. He did not provide defendant a copy in answer to the subpoena because he "had already taped the information requested and I had done that for the Circuit Attorney's Office on December 26, 1997." Because of prior problems when two tapes were made he did not make a new copy for defendant. At the close of his direct testimony on behalf of defendant he acknowledged that he had tapes still on file for the relevant time and "it may be there. I don't know. I'd have to go back and look."

On cross-examination, Officer Clobes told the circuit attorney that the tape may still be on the shelf. Out of the hearing of the jury the court made some observations. "Folks, you know, something's amiss here and I don't know what it is.... I think we need [a recess]. Something is going on and I don't know what the hell it is." The court then adjourned for the day. Thereafter, the court observed "the mysterious tape" had been found. The attorneys for both sides listened to the tape. As a result, defense counsel reversed course and objected to any further reference to the tape. Accordingly, defense counsel moved that the tape be excluded from evidence, that there be no further reference to the tape, and that the state's cross-examination be terminated and "this whole issue just be dropped at this point" because of a "grave discovery violation." He informed the court that he would thereafter not argue an adverse inference for failure of the police department to produce the tape. Defense counsel believed that allowing the state to use the tape would permit it "to parlay a discovery violation into an advantage for them." The trial court overruled the objections and allowed the state to play the tape for the jury. No explanation was offered to support a finding on the question of why the circuit attorney could not locate the tape before trial.

Defendant now argues the court erred: (1) in failing to dismiss the assault charges because the state failed to disclose the tape before trial; and, (2) in allowing the state to offer the tape in evidence during cross-examination of defense witness "in that the state's failure to properly procure the tape and disclose its contents to appellant unfairly surprised and interfered with Appellant's preparation of his case for trial" and was improper cross-examination/rebuttal evidence. Defendant has not furnished this court with a copy or a transcript of the tape. We conclude that the point on appeal relates only to the assault first degree charges because of defendant's reference to the other charges in opening and closing statements.

■ For several reasons, we reject the claim of error as a ground for dismissal of the assault charges. First, defendant did not contend and does not argue that the discovery violation was a matter of intentional misconduct. The court found that it was not. Second, defendant made no pre-trial motion to enforce discovery when the St. Louis Metropolitan Police Department failed to honor the subpoena. The policy of the department not to provide a second tape does not represent a justification for ignoring a court subpoena and would not be binding on the court. Third, the argument that the court erred in failing to dismiss the charges because the state violated criminal rules was not the argument made to the trial court. On appeal defendant sometimes argues "Rule 25.09(A)(9)[sic]," sometimes "25.03." The argument at trial was that the state failed to honor a subpoena and that the loss or destruction of the tape justified arguing to the jury that the tape contained exculpatory facts. The trial court did not err as argued because the argument made here was not made during the trial.

Fourth, the tape contained relevant, material, and probative evidence and did not

contain any exculpatory facts. Although we do not have the benefit of reviewing the tape, defendant's reaction after reviewing the tape supports an inference it did not. There was no objection on the ground that the tape contained information which was not relevant or material. As a result, the ruling of the court permitting the jury to hear the tape only denied defendant an opportunity to argue an adverse inference based on the failure of the police department to preserve the tape. Because the tape supported the charged crimes of assault first degree and contained no exculpatory information, there would be no support for concluding that the circuit attorney's office or the police department had any reason not to produce or disclose the tape before or during trial. On the contrary, the use of the tape supports a finding that they acted in good faith with the court and with the defendant.

Fifth, the inference argument, which was unavailable because the tape was found and played to the jury, did not represent a defense to the assault charges. The ruling of the trial court did not prevent defendant from producing something promised by defense counsel. It did not deny defendant the benefit of any exculpatory evidence.

Finally, the court informed defense counsel before the trial began that if the tape "would some way become available or become known to the State or its whereabouts become known, ... any request for a continuance would be looked upon favorably by the Court." Defendant never requested a continuance, which would have offered complete relief and removed any possibility of prejudice. Point denied.

We affirm.

WILLIAM H. CRANDALL, Jr., P.J. and MARY K. HOFF, J. concur.