Thomas **SHOCKLEY**, Movant–
Appellant,

v.

**STATE** of Missouri, Respondent–
Respondent.

No. 26132.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 2004.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A Fichter, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Thomas Shockley ("Appellant") appeals from the denial of his Rule 29.15[1] motion for post-conviction relief in which he claims that he was denied effective assistance of both trial and appellate counsel. We affirm.

Appellant and his girlfriend, Janie Easling ("Easling"), became stranded in North Carolina during 2000 without a car. Nancy Loudermilk ("Loudermilk"), Easling's aunt, went to North Carolina and brought them back to Dixon, Missouri, where they began living in a mobile home on Loudermilk's property. Eunice Blythe ("Blythe"), Loudermilk's daughter also lived on the property and owned a 1995 Mazda 626 LX.

On the morning of December 8, 2000, Blythe, Appellant, and Easling all rode to work in Loudermilk's Ford Explorer, driv-

---

1. All rule references are to Missouri Rules of Criminal Procedure (2003) unless otherwise noted.

en by Blythe because her car had a bad tire. After working for a couple of hours, Appellant asked Blythe to take he and Easling home because he was sick. Blythe did so and returned to work.

Loudermilk returned home from work at about 5:30 P.M. When she got home, she noticed that the lock on her front door had been picked. After looking through the house, she discovered that several things were missing and called the police. Deputy Buddy Thompson of the Maries County Sheriff's Department went to the Loudermilk house and found that someone had used a screw driver to open the door. When Blythe got home at around 6:30 P.M., Deputy Thompson asked her to check and see if anything was missing from her home. Blythe discovered that her car was missing as well as the set of keys she kept in her purse. Deputy Thompson went to Appellant and Easling's mobile home, but they were gone. Deputy Thompson then reported Blythe's car as stolen. Easling testified that she entered the Loudermilk home without permission and took a set of keys to Blythe's car that were kept there. She also testified that while she and Appellant were in North Carolina they had a new set of tires put on the car.

On December 12, 2000, Appellant and Easling were discovered sleeping in a maroon Mazda 626, with Missouri license plates, on a hotel parking lot by Corporal Keith Webster ("Officer Webster"), of the Hillsborough, North Carolina Police Department. Officer Webster awakened them and obtained identification from Appellant. Officer Webster noticed Appellant and Easling putting on their shoes as he ran a computer check on Appellant's identification and the license on the Mazda. The Mazda then left the parking lot just as Officer Webster was learning that the car had been reported stolen, and Officer Webster followed in pursuit. Appellant and Easling eventually abandoned the car and attempted to escape, but Officer Webster was able to tackle Appellant and place him under arrest. It is not clear from the record, but Easling was also apparently apprehended at some point. Appellant told Officer Webster that the reason he ran was because the car was stolen. Blythe later identified the stolen vehicle as hers and indicated that some items that she kept hanging on the rear-view mirror were in the trunk of the car when it was returned to her.

Appellant was charged with the felonies of stealing, under Section 570.030,[2] and burglary in the second degree, under Section 569.170, with both alleging that he acted in concert with Easling. A jury found Appellant guilty of both charges, and the trial court sentenced Appellant to twelve years for each charge, to run concurrently. Appellant's conviction was affirmed in *State v. Shockley*, 98 S.W.3d 885, 892 (Mo.App. S.D.2003). Appellant timely filed a motion for post-conviction relief pursuant to Rule 29.15. An evidentiary hearing was held, and the motion court issued its findings of fact and conclusions of law, denying Appellant's motion. This appeal followed.

■ Appellate review of the denial of a motion for post-conviction relief is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Parham v. State*, 77 S.W.3d 104, 106 (Mo.App. S.D. 2002). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Middleton v. State*, 80 S.W.3d 799, 804 (Mo. banc 2002) (*quoting*

---

2. All statutory references are to RSMo (2000) unless otherwise noted.

*Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000)).

■ Appellant presents two points on appeal. In his first point, Appellant claims that he was denied effective assistance of counsel when his attorney on direct appeal failed to assert the claim that there was insufficient evidence to support his conviction for stealing. Appellant claims that the evidence presented at trial was insufficient for the jury to conclude that the vehicle in which Appellant and Easling were found in North Carolina was the vehicle that was stolen from Blythe. According to Appellant, the testimony of Blythe at trial only established that her car that was stolen was returned to her. He also contends that Corporal Webster's statement at trial, "I noticed a maroon 2000—excuse me, a maroon 626 with two people sleeping in it," shows that the vehicle Appellant and Easling were found in was a 2000 model, and not the 1995 model owned by Blythe.

The State asserts that Appellant's appellate counsel acted as a reasonably competent attorney by raising four claims on appeal, two of which challenged the sufficiency of the evidence to support Appellant's convictions for burglary and stealing. *Shockley,* 98 S.W.3d at 890–891. Furthermore, the State claims that there was sufficient evidence from which the jury could find that Appellant was driving Blythe's car because of Easling's testimony that she broke into the Loudermilk's home, stole the keys for Blythe's car, and that she and Appellant fled in the car to North Carolina. Also, the evidence showed that Easling and Appellant lived together, without a car, and were taken to work on the morning of the theft by Blythe, leaving her Mazda 626 LX home, who then brought them home early. That car was missing at 5:30 P.M., however, along with Appellant and Easling, after they returned home early from work. Appellant and Easling were also found, asleep in North Carolina, in a Mazda 626 LX, which they used to flee from the police. The State claims this evidence is more than sufficient to show that the car in which Appellant and Easling were found was Blythe's.

In order for a criminal defendant to be granted post-conviction relief on the basis of ineffective assistance of counsel, the defendant must demonstrate that "his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and that he was thereby prejudiced." *Parham,* 77 S.W.3d at 106 (*citing Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)).

> To support a [Rule 29.15] motion due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it. The right to relief . . . due to ineffective assistance of appellate counsel inevitably tracks the plain error rule, i.e. the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice.

*Middleton,* 80 S.W.3d at 808 (*quoting Moss,* 10 S.W.3d at 514–15).

On direct appeal, Appellant's appellate counsel raised two points challenging the sufficiency of the evidence relating to his convictions for burglary and felony stealing. *Shockley,* 98 S.W.3d at 889–890. In that appeal, we determined that there was sufficient evidence for the jury to find Appellant guilty of felony stealing. *Id.* at 889–891. For a complete discussion of the

sufficiency of the evidence on the felony stealing conviction, *see Id.* at 889–891.

Since Appellant's appellate counsel actually raised sufficiency of the evidence to support Appellant's conviction for felony stealing as a point on appeal, and we held that there was sufficient evidence, we clearly cannot hold that Appellant's appellate counsel was ineffective as contended in the point. Accordingly, Appellant's first point is denied.

■ In his second point, Appellant claims that the motion court clearly erred in denying his motion for post-conviction relief because his trial counsel failed to object to lay witness Peggy Landreth's ("Landreth") prejudicial opinion that Easling was not capable of committing the charged crimes by herself, and to the State's closing argument referring to Landreth's statement. Appellant claims that Landreth's statement was an unqualified lay opinion which constituted an improper comment on Easling's credibility and an improper conclusion as to the ultimate issues in the case.

At trial, Appellant called Landreth as his final witness. Landreth was a friend of Loudermilk's son and also lived on Loudermilk's property. It appears from her testimony that she was called in order to show that the Loudermilks and Blythe did not like Appellant and did not like the fact that Appellant was dating Easling. On cross-examination by the State, Landreth was asked, "And you don't actually believe that Janie [Easling] was capable of doing this by herself, do you?" To which Landreth replied, "No." Appellant's trial counsel did not object, but asked Landreth on redirect, "Well, ma'am, that then is just an opinion—isn't that correct?" To which Landreth replied, "Yeah." Appellant's trial counsel further inquired, "And—okay— that's purely your opinion—isn't that correct?" To which Landreth replied, "Uh-huh." In closing argument, the prosecutor commented on Landreth, stating, "she knew [Easling] and it would have been her opinion that [Easling] couldn't or wouldn't have done this all by herself." Once again, Appellant's counsel did not object.

Appellant claims that his trial counsel was ineffective for failing to object to Landreth's statement and the Prosecutor's statement in closing. Appellant claims that this statement invaded the province of the jury by drawing a conclusion as to the ultimate issue in the case—whether Easling committed the crimes herself or if she was assisted by Appellant in some manner, and that Landreth's testimony was an improper comment on Easling's credibility. Appellant argues that a competent attorney would have objected to the testimony on this basis and sought corrective action, and that if he had done so, the jury would not have been allowed to consider or the State allowed to comment on Landreth's unqualified opinion. Furthermore, Appellant argues that the failure to object was not a strategic decision because his trial counsel testified at the post-conviction relief hearing that it was wrong for him not to object and his failure to do so was based on his own negligence.

The State argues that Landreth's testimony was not a lay witness opinion, but a comment on the facts within her personal knowledge and her comprehension of what she observed about Appellant and Easling's relationship. The State points out that Landreth was called by Appellant and that the State had the right to cross-examine her about the relevant facts of the case and to impeach Appellant's theory that he was not involved in the crimes. Finally, the State argues that even if Landreth's testimony was objectionable, Appellant cannot show that he was prejudiced by counsel's failure to object because of the

overwhelming evidence of his guilt and participation in the crimes.

■ The test for ineffective assistance of trial counsel is similar to that for ineffective assistance of appellate counsel. The movant must show that "his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and that he was thereby prejudiced." *Parham,* 77 S.W.3d at 106 (*citing Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "The mere failure to object does not constitute ineffective assistance of counsel." *State v. Lumpkin,* 850 S.W.2d 388, 395 (Mo.App. W.D.1993). When counsel fails to object, even when that objection would have been meritorious, counsel is not necessarily incompetent. *Id.* "The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *State v. Link,* 965 S.W.2d 906, 912 (Mo.App. S.D. 1998) (quoting *State v. Taylor,* 831 S.W.2d 266, 272 (Mo.App. E.D.1992)). Furthermore, trial counsel often "do not object to otherwise improper questions or arguments for strategic purposes" because frequent objections might "irritate the jury and highlight the statements complained of, resulting in more harm than good." *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996).

■ The general rule is that opinion testimony is inadmissible when the trier of fact is as capable as the witness to draw conclusions from the facts provided. *State v. Gardner,* 955 S.W.2d 819, 823 (Mo.App.

E.D.1997). Opinion evidence from lay witnesses may be admissible, however, when the witness forms the opinion from facts personally observed "where it is impossible or impracticable to place the facts before the jury in such a way that the jury may draw its own conclusion from the facts." *State v. Brown,* 683 S.W.2d 316, 317–318 (Mo.App. S.D.1984). "An observer is permitted to state natural inferences from observed conditions or occurrences or the impression made on his mind by a number of connected facts whose detail cannot be placed before the jury." *Id.* at 318. However, a lay person may not give an opinion when "it has the effect of answering the ultimate issue the jury is to determine." *State v. Cason,* 596 S.W.2d 436, 440 (Mo. 1980).

Here, Landreth testified to her belief that Easling was incapable of committing the crimes charged alone. This testimony indicates that Appellant must have acted with Easling in commission of the crimes because she could not do it herself. Appellant argues that the testimony, in itself, should have been inadmissible. While the statement, and the Prosecutor's repetition of it in closing argument, might have been objectionable, we do not find it to have resulted in such a substantial deprivation as to have prevented Appellant from receiving a fair trial. That being said, Appellant's counsel, instead of objecting to Landreth's testimony, highlighted for the jury that her statement was only her opinion.

■ Furthermore, the motion court found, and we agree, that even if Appellant's counsel had objected, it is unlikely that the result would have been any different because of the substantial other evidence of Appellant's guilt. The jury heard evidence showing Appellant and Easling's relationship; that they left work early on the day that Blythe's car was stolen; that

Blythe's keys were missing; that they were found sleeping in a Mazda 626 in North Carolina and subsequently ran from the police; that Appellant admitted that the vehicle was stolen; and that Easling admitted breaking into Loudermilk's home and stealing the keys for Blythe's car. Appellant's second point on appeal is denied.

The motion court did not clearly err in denying Appellant's motion for post-conviction relief and its judgment is affirmed.

PREWITT, J., and RAHMEYER, J., concur.