STATE of Missouri, Respondent,

v.

Diallo C. DAVIDSON,
Defendant/Appellant.

No. ED 88555.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 23, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 11, 2007.

Application for Transfer to Denied
Jan. 22, 2008.

S. Kristina Starke, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Diallo Davidson, appeals the judgment entered by the Circuit Court of the City of St. Louis following his conviction by a jury of one count of murder in the first degree, in violation of section

565.020 RSMo. (2000),[1] two counts of assault in the first degree, in violation of section 565.050, and three counts of armed criminal action, in violation of section 571.015.[2]

We hold that the trial court did not abuse its discretion in allowing a witness to testify to the content and her interpretation of letters she received from the defendant. We also hold that the admission of a medical examiner's testimony and the autopsy report constituted harmless error. Therefore, we affirm the trial court's judgment.

On January 5, 2004, the defendant purchased what he believed to be China white heroin. When the defendant discovered that the purchased substance was not China white heroin, he pursued the seller and his two cohorts in a high-speed car chase through the City of St. Louis. Having cornered the three men on a dead-end street, the defendant fired repeatedly into the men's car. Two of the men were shot, one fatally. The third man, apparently uninjured, fled the scene. The defendant's girlfriend, Hollie Pruitt, and their baby were in the car with the defendant during the drug purchase, pursuit, and shooting.

The State charged the defendant with one count of murder in the first degree, two counts of assault in the first degree, and three counts of armed criminal action for the shootings. At trial and over the defendant's objection, the State introduced portions of letters the defendant sent to Pruitt after the shootings and adduced testimony from Pruitt as to her interpretation of the letters. Also over the defendant's

objection, the State introduced the report of the murder victim's autopsy and adduced testimony from a medical examiner. The medical examiner who testified did not perform the victim's autopsy or prepare the autopsy report. The medical examiner who actually conducted the autopsy and prepared the report did not testify because she was "out-of-town on vacation or something." Following a jury trial, the defendant was convicted on all counts.

*The Letters and Related Testimony*

In his first point on appeal, the defendant claims the trial court abused its discretion in admitting the testimony of eyewitness Pruitt regarding two letters that the defendant sent to her after the shooting and in admitting portions of those letters into evidence. He makes several more particular complaints. The defendant argues that Pruitt's testimony as to the letters' meaning consisted of pure speculation and improper opinion by a lay witness. He contends that the letters were irrelevant and that the letters and related testimony improperly suggested he committed the crime of witness tampering. Similarly, the defendant claims that the State used the letters to imply that the defendant belongs to a gang. Finally, he argues that the portions of the letters read to the jury were taken out of context. We shall address each of the defendant's complaints in turn.

Pruitt read portions of the first letter into evidence as follows.

All I desire is to be free from all this shit. Hollie, I really want you to know I ain't going to do nothing to you. I'll

1. All statutory references are to RSMo. (2000).

2. The trial court sentenced the defendant as a prior offender to life without parole on the murder charge, followed by three consecutive life sentences for one count of assault and two

counts of armed criminal action. The court sentenced the defendant to fifteen years' imprisonment on the other assault count and ten years' imprisonment on the third count of armed criminal action, both sentences to be served concurrently with the life sentences.

kick your ass, if anything. I wouldn't hit you in your face. I'll really kick your ass 'cause these games got to stop. I'm so tired of this bullshit.

\* \* \*

I'll move away from this place, if that would make you comfortable, safe and secure. I promise you, ain't no hard feelings. All I'm asking is for another chance now more than ever. Like I wrote before, please showa playa love urgently.

\* \* \*

Damn, Hollie, I'm really serious and I hope you really truly answer my request. I'm fed up and ready to change. The hell with getting high and a lot of other shit.

\* \* \*

Hollie, baby girl, I know a lot of things, but should I expose those things? I'm a 'G' deep down inside and I'll never change that. I got a son and daughter to raise and things I sincerely desire to do, so let me gone head and bounce back. Straight up.

Pruitt testified that she took these statements to mean that the defendant was "just basically trying to talk, to encourage me not to come to Court, or whatever." Pruitt also read from the defendant's second letter.

I'm really asking, is there any possibility of me gaining freedom again. I understand you saying this and that, but my truest thoughts are to get there and provide for my kids straight up. Nevertheless, Ms. Pruitt, I'm serious and somehow I hope you find it in your heart and soul to forgive and forget everything.

Pruitt then testified how she interpreted the statements in the second letter.

Q. What did you take that to mean?

A. As far as what had happened and the stuff that I have to go through as far as, you know, coming here and being a witness and so forth and so on, being a witness to what happened.

We will reverse the trial court's ruling on the admission of evidence only where the court has abused its discretion. *State v. Winston*, 959 S.W.2d 874, 877 (Mo.App. E.D.1997). A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration. *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005).

We first address the defendant's claim that Pruitt's interpretation of the letters constituted mere speculation and improper opinion evidence by a lay witness. The trial court has broad discretion to admit testimony of a lay witness into evidence. *Winston*, 959 S.W.2d at 877. Pruitt testified that she took the defendant's statements to mean that he was urging her not to appear in court. Generally, a witness must state facts from which the jury forms an opinion. *State v. Gray*, 731 S.W.2d 275, 284 (Mo.App. W.D.1987). An exception to the general rule prohibiting lay opinion testimony allows a witness to testify to his or her opinion if the lay witness possesses knowledge that the jury does not and that would help the jury to determine a disputed issue. *Winston*, 959 S.W.2d at 877. The test of the opinion rule is a flexible one. 7 John Henry Wigmore, Evidence in Trials at Common Law § 1926, 35 (James H. Chadbourn ed., 1978). The dilemma that confronts us whenever a party challenges testimony on the basis that it constitutes a "lay opinion" is: "Can the jury be fully equipped, by the mere recital of the data, to draw inferences?—in other words, Can *all* the data

be *exactly* reproduced by mere testimonial words and gestures?" 7 *id.* at 35–36. Thus, opinion evidence from a lay witness may be admissible when the witness forms an opinion from facts personally observed and "where it is impossible or impracticable to place the facts before the jury in such a way that the jury may draw its own conclusion from the facts." *Shockley v. State,* 147 S.W.3d 189, 194 (Mo.App. S.D. 2004) (quoting *State v. Brown,* 683 S.W.2d 316, 317–18 (Mo.App. S.D.1984)).

More specifically, a witness who personally observed events may testify to "his 'matter of fact' comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." *Gray,* 731 S.W.2d at 285 (quoting *State v. Morrow,* 541 S.W.2d 738, 742 (Mo.App.1976)). In *Gray,* for example, the Court held the evidence admissible where a witness testified that, when he and the defendant saw a television news report of the attack on the victim, he knew what had happened by the look on the defendant's face. *Id.* at 284–85. The witness initially told police that the defendant approached him about obtaining a ride so that the defendant could commit a robbery, but the witness changed his story at trial. *Id.* at 281. The Court held that the witness's testimony about the look on the defendant's face was properly admitted as

a "short-hand rendition" of the entire transaction between the defendant and the witness. *Id.* at 285. Such a practice, the Court explained, is justified by convenience, as a "short-hand rendition" of a composite situation, and even by necessity to avoid losing evidence where it would be extremely difficult or impossible for a witness to convey an accurate sense of his or her observations if limited to a statement of facts in the traditional sense.[3] *Id.*

Here, Pruitt's testimony about her interpretation of the defendant's letters was admissible. As in *Gray,* Pruitt's testimony was a "short-hand rendition" of the entire transaction between the defendant and Pruitt as set forth in the defendant's communications to her. In addition, her testimony was necessary to avoid losing evidence. The defendant denied responsibility for the shooting, but his statements in the letters tended to show consciousness of his guilt, which we discuss more fully below. To avoid losing this "consciousness-of-guilt" evidence, the State properly had Pruitt testify to her perception of the meaning of the defendant's statements. In sum, "The opinion rule cannot avail to eliminate irony and innuendo from human language. Common experience forbids us to assume that mere words are always a complete index of the meaning which the hearer knew to accompany them." 7 Wigmore, § 1969, at 148.

3. The more liberal approach adopted in the Federal Rules of Evidence provides that a lay witness may give opinion evidence when his or her opinions are rationally based on his or her perception and are helpful to a clear understanding of the testimony or determination of a fact in issue. Fed.R.Evid. 701. Federal Rule of Evidence 701 states in full:

> If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness,

> (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The federal rule codifies convenience as the standard for admission of lay opinion testimony and emphasizes the value that opinions can have for the jury. 1 McCormick on Evidence § 11, 55 (Kenneth S. Broun et al. eds., 6th ed., 2006). This approach was cited with approval in *Gates v. Sells Rest Home, Inc.,* 57 S.W.3d 391, 399 (Mo.App. S.D.2001).

■ We next address the defendant's arguments that the letters were irrelevant and that the letters, along with Pruitt's testimony, improperly associated the defendant with the crime of witness tampering. After reading several statements from the defendant's first letter, Pruitt testified that she understood that the defendant was urging her not to appear in court. Pruitt then read from the defendant's second letter, concluding with the statement, "Nevertheless, Ms. Pruitt, I'm serious and somehow I hope you find it in your heart and soul to forgive and forget everything." Pruitt testified that she took that to mean, "As far as what had happened and the stuff that I have to go through as far as, you know, coming here and being a witness and so forth and so on, being a witness to what happened."

■ Generally, evidence of uncharged crimes, wrongs, or acts is inadmissible to show the defendant's propensity to commit such crimes. *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999); *State v. Cannon*, 215 S.W.3d 295, 301 (Mo.App. W.D.2007). Such evidence, however, is admissible if it is logically relevant, in that it has some legitimate tendency to directly establish the defendant's guilt of the crime charged, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. *Barton*, 998 S.W.2d at 28; *Cannon*, 215 S.W.3d at 301.

■ Here, Pruitt's testimony about the content of the letters she received from the defendant was highly probative. "Conduct and declarations of a defendant that are relevant to show consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime." *Barton*, 998 S.W.2d at 28. Specifically, evidence that the defendant threatened a witness is admissible to show consciousness of guilt. *State v. White*, 870

S.W.2d 869, 875 (Mo.App. W.D.1993). The defendant claimed that he was not responsible for the shooting, but statements in his letters to Pruitt contradict his claims. The portions of the defendant's letters admitted into evidence were relevant. They included statements asserting that the defendant would "kick [Pruitt's] ass," asking if he had any possibility of regaining his freedom, and expressing hope that Pruitt would "forget everything." The statements tended to show the defendant's consciousness of guilt and a desire to conceal the offenses. Therefore, the letters and Pruitt's related testimony as to their content were admissible.

■ We next address the defendant's contention that the statement, contained in one of his letters to Pruitt, that "I'm a 'G' deep down inside" prejudiced him because the State used it to imply that the defendant belongs to a gang. Evidence of being a "G" does not associate the defendant with any crime and is not prejudicial. Gang membership may imply prior bad acts, but it does not support a finding that the defendant committed any prior bad acts. *State v. Willis*, 10 S.W.3d 156, 158 (Mo.App. E.D.1999). Where, as here, there is no reference to any specific criminal act committed either by the defendant or by any gang to which the defendant might belong, admission of such a vague reference as being a "G" does not support a claim of reversible error. *See id.*

■ Finally, we address the defendant's complaint that the portions of the letters read to the jury were taken out of context. The defense claimed that the statements concerned the future of the defendant's relationship with Pruitt, but that the only way that explanation could come before the jury was to have the defendant testify. Thus, the defendant argues, he was compelled either to testify in

order to explain his statements' meaning, in violation of his constitutional rights, or to forego testifying and have the jury speculate as to why Pruitt's opinion went unchallenged. We disagree.

A criminal defendant has the right not to testify, and the parties may not comment on the defendant's exercise of that right. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). No party made such a comment here. The defense was free to provide context for the portions of the letters read to the jury by cross-examining Pruitt about the letters' content, additional statements contained therein, and her perception. The defense chose not to do so. Furthermore, the court instructed the jury that the defendant had the right not to testify and that "no inference of any kind may be drawn from the fact that the defendant did not testify." We presume that jurors follow the court's instructions. *State v. Davis*, 122 S.W.3d 690, 693 (Mo. App. E.D.2003). Point denied.

### The Autopsy Report and the Medical Examiner's Testimony

In his second point, the defendant claims the trial court erred in admitting the testimony of one medical examiner to testify regarding the findings of another medical examiner who actually performed the autopsy of the victim. The defendant contends that this testimony violated his rights under the Confrontation Clauses of the United States and Missouri Constitutions.[4] The State argues, first, that the autopsy report does not qualify as testimonial, and thus the U.S. Confrontation Clause is not implicated. Second, the State argues that even if the report is deemed testimonial, its admission constitutes harmless error. Any error in the report's admission was harmless, the State contends, because the victim's cause of death went undisputed and other evidence clearly established the cause of death.

Typically, we review claims of erroneous admission of evidence for an abuse of discretion. *State v. March*, 216 S.W.3d 663, 664 (Mo. banc 2007). However, the question of whether a defendant's constitutional rights under the Confrontation Clause were violated is a question of law that we review *de novo*. *Id.* at 664–65.

The Confrontation Clause provides that a defendant has the right to confront the witnesses against him or her. U.S. CONST. amend.VI. The Confrontation Clause requires that the court exclude all testimonial evidence unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant. *March*, 216 S.W.3d at 665 (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Before the U.S. Supreme Court's *Crawford* decision, Missouri cases held that reports prepared by an unavailable declarant were admissible against the defendant, despite a Confrontation Clause objection, because such reports fell under the business-records exception to the hearsay rule. *Id.* In view of *Crawford*,

---

4. The Missouri constitution provides "[t]hat in criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face." Mo. CONST. art. 1, sec. 18(a). The defendant's point relied on cites this provision, but he does not further differentiate the Missouri from the federal claim. "The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006)(quoting *State v. Schaal*, 806 S.W.2d 659, 662 (Mo. banc 1991)). For these reasons, we will address the U.S. Constitution's Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), with the understanding that the discussion applies equally to rights protected by the Missouri Constitution.

however, the business-records exception to the hearsay rule does not overcome the Confrontation Clause right. *Id. Crawford* rejects the view that application of the Confrontation Clause to out-of-court statements depends upon the law of evidence at the time of trial. *Crawford v. Washington*, 541 U.S. 36, 50–51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The key issue in this case then is whether the autopsy report qualifies as "testimonial" under *Crawford*. While the U.S. Supreme Court did not offer an exact definition of what constitutes a "testimonial statement," the Court did describe three formulations of a "core class" of "testimonial statements": 1) *ex-parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, or similar pretrial statements that a declarant would reasonably expect to be used for prosecution; 2) extrajudicial statements contained in formal testimonial materials such as affidavits, depositions, prior testimony, or confessions; and 3) statements made under circumstances where it is reasonable to believe the statement will be available for later use at trial. *Id.* at 51–52, 124 S.Ct. 1354.

We conclude that the autopsy report in this case qualifies as a "testimonial statement" under *Crawford*. One medical examiner prepared the autopsy report at the request of law enforcement in anticipation of a murder prosecution, and the report was offered to prove the victim's cause of death. The State sought to use the report and the testimony of another medical examiner in lieu of the testimony of the medical examiner who prepared the report. When an autopsy report is prepared for purposes of criminal prosecution, as this one was, the report is testimonial. *See March*, 216 S.W.3d at 667. The court may not admit the report without the testimony of its preparer unless he or she is

unavailable and the defendant had a prior opportunity for cross-examination. *Id.* Those requirements were not met here. Admission of the report and another medical examiner's testimony in lieu of the testimony of the medical examiner who prepared the report violated the defendant's Confrontation Clause rights.

 However, constitutional errors do not necessarily require reversal if we determine that the error was harmless beyond a reasonable doubt. *State v. Lopez*, 128 S.W.3d 195, 201 (Mo.App. S.D. 2004) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also State v. Greer*, 159 S.W.3d 451, 462 (Mo.App. E.D.2005). To find an error harmless beyond a reasonable doubt, we must find that no reasonable doubt exists that the admitted evidence failed to contribute to the jury's verdict. *March*, 216 S.W.3d at 667.

The U.S. Supreme Court has explained the rationale for adopting the harmless-error rule:

> Since *Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Lopez*, 128 S.W.3d at 201 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Even though admission of the other medical examiner's testimony and the autopsy report violated the Confrontation Clause, we must

determine whether this evidence contributed to the defendant's conviction for first-degree murder and armed criminal action.

The defendant argues that the autopsy report was essential to prove the victim's cause of death, and thus, the jury necessarily relied on the report and the other medical examiner's related testimony to find the defendant guilty of first-degree murder and armed criminal action. We disagree. Even if the trial court had excluded the medical examiner's testimony and the autopsy report, we conclude that the jury would have found that the victim died as the result of a gunshot wound.

■■■ In opening argument the defendant conceded that the victim died from gunshot wounds.

> There are some facts that we are not going to dispute in this case, one being that [the injured victim] was in a car with [the murder victim], that he was shot and had the injuries that [the prosecutor] has previously laid out for you, and also that [the murder victim] was shot in the back of the neck and died as a result of these injuries.

> What we are disputing is that Diallo Davidson is the person responsible....

In addition, the State adduced overwhelming evidence, other than the autopsy report and medical examiner's testimony, to establish that the victim died from a gunshot wound. Evidence challenged on constitutional grounds that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt. *Id.* at 202. Two witnesses testified that they observed the defendant shoot repeatedly at the car in which the murder victim was riding. The victim who survived testified that the second shooting victim was gasping for air, that he had been shot, and that he died immediately thereafter.

Because the defendant conceded that the second victim died as a result of injuries suffered when he was shot and other overwhelming evidence established the victim's cause of death, any error in the admission of the autopsy report and the medical examiner's testimony was harmless beyond a reasonable doubt. Point denied. We affirm the trial court's judgment.

BOOKER T. SHAW, J., and NANNETTE A. BAKER, J., concur.