STATE of Missouri, Respondent,

v.

Tessy L. BELL, Appellant.

No. WD 68914.

Missouri Court of Appeals, Western District.

Jan. 13, 2009.

Ruth Sanders, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD LOWENSTEIN and JAMES SMART, JJ.

JOSEPH P. DANDURAND, Judge.

Tessy Bell appeals his convictions of voluntary manslaughter and armed criminal action following a jury trial in the Circuit Court of Jackson County. On appeal, Mr. Bell contends that the trial court erred in allowing the current medical examiner to testify about an autopsy performed by the former medical examiner, claiming that such testimony violated Mr. Bell's constitutional rights and that he was thereby prejudiced. The point is denied, and the judgment of the trial court is affirmed.

## Background

On April 20, 2005, several people were at Alice Carballo's house, including Mrs. Carballo's cousin, Tessy Bell. Mrs. Carballo was married to Rolando Carballo, who arrived at the house after getting off work. Mrs. Carballo and Mr. Carballo got into an argument, Mr. Bell confronted Mr. Carballo, and a gunshot was fired inside the house. Mrs. Carballo then asked Mr. Bell to leave.

There is conflicting evidence about Mr. Bell's exact location during the following sequence of events, but it is undisputed that after being asked to leave, Mr. Bell shot Mr. Carballo in the forehead and caused Mr. Carballo's death. Mr. Bell was

subsequently charged with second-degree murder and armed criminal action. At trial, the defense presented evidence and argued in support of self-defense and defense of others. Mr. Bell testified that as he was leaving the house, while at the bottom of the front porch steps, he heard "Tessy, look out" and turned and fired at Mr. Carballo, who he claimed was coming toward him with a knife. Witnesses for the State, however, testified that Mr. Carballo was standing on the front porch when he was shot and that Mr. Bell was standing on the street near his vehicle—not on the front porch steps—when he fired at Mr. Carballo.

The State called Dr. Mary Dudley, the chief medical examiner for Jackson County, to testify as to the cause and manner of Mr. Carballo's death. Mr. Bell objected to Dr. Dudley's testimony on the ground that the former medical examiner, Dr. Thomas Gill [1], had actually conducted the autopsy and drafted the report upon which Dr. Dudley was basing her opinions. Mr. Bell argued that allowing Dr. Dudley's testimony would violate his right to confrontation. The court overruled Mr. Bell's objection, finding that Dr. Dudley would be testifying as to her *own* opinions at trial.

Dr. Dudley testified that the cause of Mr. Carballo's death was a gunshot wound to the head. Dr. Dudley stated that she reached this conclusion after reviewing all of the evidence and that her opinion coincided with the opinion of Dr. Gill. The State then asked Dr. Dudley to testify about State's Exhibit 33, an autopsy photograph of Mr. Carballo. The following exchange took place:

> Q: Can you tell from the photographs and other evidence or items that you reviewed, and specifically State's 33,

whether or not that's an entrance wound or an exit wound?

A: This is an entrance wound.

Q: How can you tell that?

A: First of all, there wasn't an exit wound so that made it easier. The bullet did not exit. It was in the back of the head, towards the back of the left of the head. But the general characteristics of an entrance wound are present, which is, there's an abrasion wound which is oval or round. If the gun is very close to the skin sometimes there's soot or stippling on the skin, which there wasn't in this case, but it has the general features of an entry wound.

Q: When you say soot or stippling, what are you referring to?

A: Generally that's the—the soot is what would come from the gun, especially if the gun was on contact with the skin and would be deposited on the skin. If the gun was a little further away, like an arm's length, there would be burnt and unburnt gun powder, little stippling or flakes embedding into the skin around the wound.

Q: And did you see any soot or stippling in State's Exhibit 33?

A: No.

Q: Now, does your opinion comport with Dr. Gill's opinion?

A: Yes.

Q: And what was Dr. Gill's opinion in this case?

A: His cause of death is gunshot wound to the head, and he *also* put in his report that there was no soot or stippling seen. **(emphasis added)**

In its closing, the State relied on Dr. Dudley's testimony, as well as witness testimony, in refuting Mr. Bell's self-defense and defense of others theories. The State

---

**1.** Dr. Gill had moved out of state and was    unable to attend the trial.

argued, "[W]e know it wasn't a close shot. Since Dr. Dudley ... said there's no soot or stippling. We're not talking about somebody at close range. There's a distance with this shot."

The jury found Mr. Bell guilty of the lesser-included charge of voluntary manslaughter and armed criminal action. Mr. Bell was sentenced to eighteen and ten years, respectively, in the Missouri Department of Corrections. The sentences were ordered to run concurrently.

This appeal followed.

## Standard of Review

■ Appellate review of evidentiary rulings is typically limited to whether the trial court abused its discretion. *State v. March,* 216 S.W.3d 663, 664 (Mo. banc 2007). "However, the question of whether a defendant's constitutional rights under the Confrontation Clause were violated is a question of law that we review *de novo.*" *State v. Davidson,* 242 S.W.3d 409, 416 (Mo.App. E.D.2007)(citing *March,* 216 S.W.3d at 664–65).

## Discussion

■ On appeal, Mr. Bell claims that Dr. Dudley's testimony regarding Dr. Gill's autopsy report and opinion violated Mr. Bell's right to cross-examine and confront the witnesses against him as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 18(a) of the Missouri Constitution. Mr. Bell argues that Dr. Gill's report and opinion were testimonial hearsay that should not have been allowed and that prejudice resulted from the admission of Dr. Dudley's testimony regarding Dr. Gill's findings.

■ "The Confrontation Clause provides that a defendant has the right to confront the witnesses against him or her."

*Id.* at 416 (citing U.S. CONST. AMEND. VI). In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court "established a new framework for addressing a criminal defendant's confrontation rights under the Sixth Amendment." *State v. Justus,* 205 S.W.3d 872, 878 (Mo. banc 2006). The Supreme Court declared that "in order to admit 'testimonial' hearsay statements of an unavailable witness, the accused must have had an opportunity to confront, i.e., cross-examine, the witness." *Id.* An autopsy report, when prepared for the purpose of criminal prosecution, is a "testimonial statement." *Davidson,* 242 S.W.3d at 417. As such, an autopsy report, or testimony regarding an autopsy report, cannot be admitted without testimony from the person who conducted the autopsy or prepared the report unless the defendant has had an opportunity for cross-examination. *See id.*

In this case, Dr. Gill conducted the autopsy and prepared the report regarding Mr. Carballo's death. Dr. Dudley, however, as the chief medical examiner of Jackson County, reviewed the evidence and testified as to her conclusions regarding Mr. Carballo's death as well as the conclusions of Dr. Gill. Dr. Dudley's testimony, to the extent she discussed Dr. Gill's opinions, was error and violated Mr. Bell's Confrontation Clause rights. "Admission of ... another medical examiner's testimony in lieu of the testimony of the medical examiner who prepared the report" violates a defendant's Confrontation Clause rights. *Id.*

■ Constitutional errors, however, do not require reversal if those errors are harmless beyond a reasonable doubt. *Id.* To find an error harmless beyond a reasonable doubt, there must be "no reasonable doubt that the error's admission failed to contribute to the jury's verdict."

*March,* 216 S.W.3d at 667. In this case, Dr. Dudley testified to the cause and manner of death of Mr. Carballo. While Dr. Dudley did testify that her opinion regarding Mr. Carballo's death concurred with the opinion of Dr. Gill, Dr. Dudley came to her own conclusions regarding Mr. Carballo's death. The fact that Dr. Dudley's conclusions coincided with those of Dr. Gill does not automatically render Dr. Dudley's conclusions prejudicial.

Mr. Bell's reliance on *March* for the proposition that Dr. Dudley's testimony created reversible error is misplaced. While there is no question that, under *Crawford,* the autopsy report was testimonial, the *March* case is distinguishable in at least two compelling respects. First, unlike in *March,* the exhibit (autopsy report) herein was never offered or admitted into evidence. Second, in *March,* the lab report was admitted for the *purpose* of proving the key element of the crime charged—that the substance seized from the defendant in a drug prosecution case was, in fact, a controlled substance.

In the case *sub judice,* the *conclusion* reached in the autopsy report was that Mr. Carballo died from a gunshot wound to the forehead. The *conclusion* reached in the autopsy report was not a contested issue herein. The defense in this case is that Mr. Bell shot Mr. Carballo in lawful self-defense or in defense of others. Dr. Dudley did not conclude from a review of Mr. Gill's report or findings that Mr. Bell did not act in self-defense. Dr. Dudley's opinion that the gunshot came from a distance in excess of an arm's length resulted from a review of all of the evidence, and specifically a review of State's Exhibit 33. As the trial court correctly determined, Dr. Dudley's opinion was not based on any report or conclusion of Dr. Gill. Dr. Dudley testified that Dr. Gill *also* put in *his* report that there was no soot or stippling seen.

However, Dr. Dudley's conclusions were clearly her own, based upon a proper review of the photographic evidence.

Moreover, Dr. Dudley's testimony that there was no soot or stippling around Mr. Carballo's wound did not tend to refute any of the evidence presented in this case. There was no evidence presented, and no testimony from any witness, that Mr. Bell was within an arm's length of Mr. Carballo when he shot Mr. Carballo.

■ Furthermore, the State did not solely rely on Dr. Dudley's testimony to support its case. "Evidence challenged on constitutional grounds that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt." *Davidson,* 242 S.W.3d at 418. There was witness testimony to support the State's assertion that Mr. Bell was standing on the street near his vehicle when he shot Mr. Carballo. Mr. Bell may contend that Dr. Dudley's testimony damaged his argument of self-defense or defense of others, but, in fact, Dr. Dudley's testimony merely stated that the gun was not close enough to the skin to leave soot or stippling around the wound.

### Conclusion

After reviewing all of the evidence, we agree with the trial court's determination that Dr. Dudley came to her own conclusions regarding Mr. Carballo's death. She testified to her conclusions at trial. Although it was error for Dr. Dudley to testify about Dr. Gill's report or conclusions, that testimony was merely cumulative, and the error was harmless. The judgment is affirmed.

All concur.