STATE of Missouri, Respondent,

v.

Justin J. WALKUP, Appellant.

No. WD 69838.

Missouri Court of Appeals,
Western District.

June 16, 2009.

Jeannie M. Willibey, Esq., Kansas City, MO, for appellant.

Shaun J. Mckelprang, Esq., and Jayne T. Woods, Esq., Jefferson City, MO, for respondent.

Before Division Three: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

Justin Walkup appeals his convictions for second-degree murder and armed criminal action. He contends the circuit court erred in allowing the current chief medical examiner for Jackson County to testify because her testimony contained inadmissible hearsay statements about the autopsy performed by the former chief medical examiner. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The sufficiency of the evidence is not in dispute. The facts, in the light most favorable to the verdict, establish that on January 21, 2003, Walkup killed his girlfriend, Deborah Lilly, by stabbing her. After the stabbing, Walkup took Lilly's money, jewelry, and cell phone and left in her car. As he was driving around, he used Lilly's cell phone to call a friend. He told the friend that he had killed Lilly by beating, choking, and stabbing her. Eventually, he ran the car off the road and crashed into a fence at the home of Leslie Slover and Greg Smith. Slover saw Walkup take something out of his car and throw it behind a shed on their property. Walkup told Slover and Smith that he had killed his girlfriend. When the police arrived to investigate the car crash, Walkup screamed to the police, "I killed my girlfriend. I committed murder. I killed my girlfriend." After he was taken into custody, Walkup again admitted to the police orally, and in writing, that he had killed Lilly. The police later recovered two knives, with Lilly's blood on them, from Slover and Smith's property.

Walkup was charged with first-degree murder and armed criminal action. He was tried and convicted of these offenses in 2004, and sentenced to concurrent terms of life imprisonment without parole for the murder charge and life imprisonment for the armed criminal action charge. The Missouri Supreme Court reversed his convictions and sentences on direct appeal, finding that the circuit court erred in excluding evidence that Walkup suffered from a mental disease or defect that would have negated the element of deliberation. *State v. Walkup*, 220 S.W.3d 748, 758 (Mo. banc 2007).

Walkup was retried in March 2008. At the time of the second trial, Dr. Thomas Gill, who had performed the autopsy on

Lilly's body in 2003 and had testified during the first trial, was no longer employed as the chief medical examiner for Jackson County. Dr. Mary Dudley was his successor.

Before trial, Walkup filed a motion to preclude Dudley from testifying in place of Gill. Walkup asserted that Gill was available to the State, the State's use of Dudley's testimony based on Gill's autopsy report was inadmissible hearsay, and the admission of Dudley's testimony would violate his constitutional right to cross-examine and confront the witnesses against him.

The State filed a motion to permit Dudley to testify in place of Gill. In its motion, the State asserted that Gill's returning to Jackson County to testify would create a hardship to Gill's current practice. The State alleged that Dudley, as the current chief medical examiner, could use Gill's autopsy report and photographs in reaching her own independent opinion as to the cause and manner of Lilly's death. After hearing argument on the motions, the court sustained the State's motion and allowed Dudley to testify in Gill's place.

Dudley testified that Gill performed the original autopsy on Lilly's body, and she relied on Gill's autopsy report and photographs, scene investigation reports prepared by death investigators, the toxicology report, and body diagrams to conduct an independent analysis. Dudley testified that the materials she relied upon to conduct her independent analysis are the type of materials relied upon by experts in the field of forensic pathology.

As part of her analysis, Dudley prepared a wound chart showing each of the wounds on Lilly's body. According to Dudley, Lilly had both sharp and blunt-force injuries. She testified Lilly had a total of eleven sharp-force injuries, including both incised wounds and stab wounds. Dudley numbered each stab wound on the chart and wrote the depth of the wound. Additional-

ly, she included the letter Gill had used to label the stab wounds. Dudley also marked the blunt-force injuries, which included abrasions, contusions, and lacerations. She further noted on the chart the internal injuries caused by the stab wounds and blunt-force injuries.

Based upon her independent examination of the available materials in the case, Dudley concluded that, while there was evidence Lilly had been choked, she did not die from strangulation. Rather, Dudley opined that the cause of Lilly's death was multiple blunt and sharp-force injuries and the manner of her death was homicide.

The jury found Walkup guilty of the lesser-included offense of second-degree murder and armed criminal action. The court sentenced him, as a prior offender, to concurrent terms of life imprisonment for second-degree murder and 140 years imprisonment for armed criminal action. Walkup appeals.

## STANDARD OF REVIEW

■ Generally, appellate review of the circuit court's ruling on the admission of evidence is limited to whether the court abused its discretion. *State v. March,* 216 S.W.3d 663, 664 (Mo. banc 2007). However, whether the admission of Dudley's testimony violated Walkup's rights under the Confrontation Clause is a question of law that we review *de novo. Id.* at 664–65.

## ANALYSIS

■ In his sole point on appeal, Walkup contends the admission of Dudley's testimony and wound chart violated his rights under the Confrontation Clause. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" In *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct.

1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court ruled that the Confrontation Clause requires the exclusion of all testimonial hearsay statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *March*, 216 S.W.3d at 665.

■ An autopsy report prepared for the purpose of a criminal prosecution is a testimonial statement. *State v. Bell*, 274 S.W.3d 592, 595 (Mo.App.2009). "As such, an autopsy report, or testimony regarding an autopsy report, cannot be admitted without testimony from the person who conducted the autopsy or prepared the report unless the defendant has had an opportunity for cross-examination." *Id.* Hence, in *State v. Davidson*, 242 S.W.3d 409, 417 (Mo.App.2007), the Eastern District of this court held that the admission of an autopsy report and testimony about the report from another medical examiner in lieu of the medical examiner who actually performed the autopsy and prepared the report violated the defendant's Confrontation Clause rights.

Likewise, this court recently ruled that it was error to allow one medical examiner to testify as to the opinions of another medical examiner that had performed the autopsy and prepared the report. *Bell*, 274 S.W.3d at 595.[1] In *Bell*, the current chief medical examiner testified to conclusions she reached based upon all of the evidence, including the former chief medical examiner's autopsy report. *Id.* at 594. Although the former medical examiner's autopsy report was not offered into evidence, the State asked the current medical examiner if her opinion "comport[ed]" with the former medical examiner's opinion. *Id.* After she replied that it did, the State asked her to testify to the former medical examiner's opinion, which she did. *Id.* We

held that the admission of the current medical examiner's testimony, *"to the extent she discussed [the former medical examiner]'s opinions,* was error and violated [the defendant]'s Confrontation Clause rights." *Id.* at 595 (emphasis added).

Relying on *Davidson* and *Bell,* Walkup asserts that Dudley's testimony and wound chart were hearsay. Walkup argues that Dudley obtained information regarding the number and size of the stab wounds from Gill's autopsy report and merely rewrote Gill's factual findings in a different format, which the State called Dudley's "own" wound chart. Because she did not testify that she measured the stab wounds or was present when the stab wounds were examined, Walkup contends Dudley's testimony and wound chart constituted testimonial hearsay evidence of Gill's findings and opinions. We disagree.

Dudley testified that she prepared the wound chart "after looking over the photographs and the autopsy report." She did not specify whether she obtained the number and measurements of the stab wounds from the autopsy photographs, which were admitted into evidence, or the autopsy report, which was not. Regardless, the number and measurements of the wounds were factual information, not Gill's opinions. Dudley did not mention a conclusion drawn by Gill or restate an opinion made by Gill, nor did the State attempt to introduce Gill's autopsy report. Rather, Dudley testified as a qualified expert to her own conclusions and opinions based upon her independent analysis of the factual information available to her. *State v. Owsley*, 959 S.W.2d 789, 795 (Mo. banc 1997). Dudley was entitled to rely upon the factual information contained in the autopsy report and photographs, scene investigation reports, the toxicology report, and body diagrams as support for her opinions

---

**1.** The chief medical examiners in *Bell* were also Dudley and Gill.

because she testified those materials are reasonably relied upon by other experts in the field of forensic pathology. *State v. Brown,* 998 S.W.2d 531, 549 (Mo. banc 1999).

Because neither Dudley's testimony nor wound chart contained Gill's testimonial hearsay statements, the Confrontation Clause was not triggered. *State v. Haslett,* 283 S.W.3d 769, 781–82 (Mo.App. S.D. 2009). The circuit court did not err in admitting Dudley's testimony and wound chart.

 Furthermore, even if we had found Dudley's testimony and wound chart to be inadmissible, Walkup's claim would still fail. Constitutional errors "do not require reversal if those errors are harmless beyond a reasonable doubt." *Bell,* 274 S.W.3d at 595. "To find an error harmless beyond a reasonable doubt, we must find that no reasonable doubt exists that the admitted evidence failed to contribute to the jury's verdict." *Davidson,* 242 S.W.3d at 417.

Walkup contends that the admission of Dudley's testimony and wound chart was not harmless error because the State used the number and size of Lilly's wounds to argue that he acted deliberately and, therefore, committed first-degree murder instead of second-degree murder or voluntary manslaughter. While it is true that the State used this evidence to argue deliberation, the jury did not find that Walkup deliberated. The jury rejected the State's evidence of deliberation when it acquitted him of first-degree murder and instead convicted him of second-degree murder. Hence, Walkup's claim that he was prejudiced by the State's use of Dudley's testimony and wound chart to argue deliberation necessarily fails. The point on appeal is denied.

## CONCLUSION

We affirm the judgment of conviction.

All Concur.